The **SOUTHLAND CORPORATION and Missouri Terminal Oil Co.,**
Plaintiffs-Respondents,

v.

**Irving OLIAN and Frances Olian,**
Defendants-Appellants.

No. 51685.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 28, 1987.

Rehearing Denied May 27, 1987.

G. Carroll Stribling, Jr., Fordyce & Mayne, P.C., St. Louis, for defendants-appellants.

Terrance L. Farris, Clayton, for Southland Corp.

Edward D. Weakley, St. Louis, for Missouri Terminal Oil.

G. Carroll Stribling, Jr., Clayton, for interested party (Solon Gershman).

PER CURIAM.

Defendants, Irving and Frances Olian, appeal from the judgment of the trial court, in a court-tried case, in favor of plaintiffs, The Southland Corporation (Southland) and Missouri Terminal Oil Company (MoTer), in an action for declaratory judgment and monetary damages for breach of a lease. We affirm in part and reverse in part.

Defendants are husband and wife. Irving Olian is the record owner of a certain tract of land located in St. Louis County. In 1968, defendants entered into a "Ground Lease" with Gulf Oil Corporation (Gulf). Under the terms of the agreement, Gulf leased the ground for $1,000 per month for a term of twenty years with four successive five year options to renew reserved by lessee. The lease provided, *inter alia:*

2. Said premises are leased for the purpose of the sale and storage thereon of gasoline and petroleum products and for the sale of such other items and the providing of such other services as are customarily sold or provided in a gasoline service station. The premises may, at Lessee's option be used for the conduct of any other lawful business thereon upon receiving Lessor's prior written consent, which consent will not be unreasonably withheld.

12. Lessee shall have the right and privilege to assign this Lease or Sublet said premises, in whole or in part, for the whole or any part of the term of this Lease, or any extension thereof, upon such terms as to it shall seem best. Subject, however, to provisions of paragraph two (2) as to use and provided, however,

that any such subletting or assignment shall not release the Lessee from its liability to pay rental as herein provided and the performance of its obligations under this Lease Agreement.

13. Lessor agrees that Lessee may demolish and remove any buildings and improvements now on the leased premises without any further compensation to Lessor and without liability for such destruction and removal. Lessee shall have the right to erect suitable buildings and improvements on the leased premises, substantially similar to Lessee's CR–67–B–3, Colonial design, and to install, remove, and re-install trade fixtures and equipment as deemed necessary by Lessee for the conduct of its business, or for the use of said premises for the purpose authorized hereunder. It is further agreed that Lessee shall have the right to remove any or all of said buildings, improvements, equipment and trade fixtures from the said premises at the expiration of this Lease or any extension thereof, and that it may enter upon said premises at any time prior to, the expiration of this Lease, or any extension thereof, for the purpose of removing any of its buildings, improvements, equipment and trade fixtures located on said leased premises. In no event will title to any of said property vest in Lessor, but title will remain in Lessee at all times.

Gulf operated a gasoline service station on the site in accordance with the lease. In 1974, Gulf assigned its interest in the Ground Lease to MoTer for use as a service station. In 1984, MoTer entered into a sublease with Southland. Southland planned to raze the existing structures on the premises and build a new structure for a convenience store selling primarily groceries, liquor, and petroleum products. When defendants and Solon Gershman [1] ob-

jected, MoTer brought this action. Southland was later granted leave to intervene.[2] More facts will be set forth as they relate to the points on appeal.

Before specifically addressing defendants' claims of trial court error, it is important to set forth what is not in dispute. Defendants agree that MoTer had a contractual right to sublease to Southland and that the lessee or sublessee had the right to demolish any existing structures on the premises. Defendants also state that they have never objected to a convenience store in the existing building. Their objection was not to the change in use but rather to the construction of a new building.

The first question raised on appeal is whether the trial court erred in finding that the terms of paragraph 13 of the Ground Lease permitted Southland to construct a new building upon the leased premises. Defendants contend that only the original lessee, Gulf, had the right to engage in new construction at the inception of the lease. They argue that the effect of the trial court's ruling was to improperly grant plaintiffs the remedy of reformation of the contract. MoTer and Southland maintain that the trial court's ruling is simply an interpretation of the plain language of the lease. The trial court found that, "According to the terms of paragraph 13 of the Ground Lease, MoTer or its sublessees are entitled to demolish the structure thereon and build new structures so long as such new structures are substantially similar to the structures currently located on the premises."

■ In determining whether the trial court's ruling is correct, it is important to remember that the lease is a Ground Lease. As stated in the last sentence of paragraph 13, "In no event will title to any of said property vest in Lessor, but title will remain in Lessee at all times." Defendants

---

1. There was evidence that Solon Gershman and wife may have had an interest in the property which is not of record.

2. Our review of the record indicates that the sublease between MoTer and Southland was contingent upon the happening of certain events. Apparently none of these contingencies had taken place at the time Southland was

granted leave to intervene. Hence there is a question as to Southland's standing to proceed as a party plaintiff. The defendants raised that point in their pleadings but did not pursue it at trial or on appeal. Since the point is not briefed and the record is not fully developed, we decline to address the issue, *sua sponte.*

therefore acquired no interest in any buildings which were subsequently constructed. All that was retained by defendants was some degree of architectural control over the type of building that might be erected pursuant to the language of paragraph 13. The plain language of the lease gives Southland the right to construct a new building. The defendants simply have some control over the type of building. Defendants' first point is denied.

■ Defendants next contend that the trial court erred in finding that they breached the Ground Lease by unreasonably withholding their consent to the new construction. Further facts are necessary to understand this issue.

In response to the proposed sublease between Southland and MoTer, Southland directed William G. Douros to contact Mr. Olian and "[t]o have the supplemental agreement signed for Southland." Douros was the president of a real estate and construction company serving either MoTer or Southland. Douros testified that he first attempted to obtain consent for the Supplemental Agreement on November 15, 1984. At that time Mr. Olian was reluctant to talk about the matter without participation by Solon Gershman. On November 16, 1984, Douros and Larry Moore, a real estate representative of Southland, met with Irving Olian and Solon Gershman. At that time they presented to Olian a two page Supplemental Agreement which provided in part, "4. Whereas Lessor specifically consents to the Sublease as provided herein and to sublessee's proposed use, operation and construction." At that meeting Douros considered the proposed sublease between MoTer and Southland to be confidential. It was not produced for Olian's inspection. In addition, at that meeting no details were presented to Mr. Olian or Mr. Gershman from which they could determine whether the replacement building would be in compliance with paragraph 13

of the Ground Lease which authorized a lessee to erect suitable buildings which were "substantially similar to Lessee's [Gulf Oil's] CR–67–B–3, Colonial design."

Defendants refused to consent to the Supplemental Agreement for various reasons. However, the purpose of the meeting and the only request of Olian and Gershman was to consent to a supplemental agreement which referred to a proposed sublease which was not produced.

MoTer and Southland sought approval of the Supplemental Agreement and that is what Olian refused to give. It is of no consequence that some of the stated reasons for refusing to consent to building replacement are, or may be unreasonable, as the trial court found. Under the plaintiffs' evidence the consent to the Supplement Agreement was a pre-requisite to the acts of building replacement. Further, no request was ever made for permission only to tear down the existing building. The request was to approve the Supplemental Agreement and this request was supported by an explanation that such approval would consent to tearing down the existing building *and* construction of a new building the details for which were not furnished.

Although defendants had objections to Southland's new construction, they were never asked simply to approve that construction and consent to a change in use. The construction and the change in use are governed by Paragraphs 2 and 13 of the Ground Lease. The signing of a supplemental agreement by the lessors was never a requirement of the Ground Lease. Further, Olian's refusal to sign the Supplemental Agreement cannot be found to be unreasonable when he was never provided with sufficient information to make an advised decision.

We therefore find that the trial court erred in finding that defendants breached the Ground Lease.[3]

3. The trial court's finding that the proposed building and other improvements conform to the requirements of the Ground Lease is based, in part, on evidence that was never presented to Olian or Gershman at the time they were asked to approve the Supplemental Agreement. As that finding of the trial court relates to plaintiffs' declaratory judgment action it is unchallenged on appeal. Plaintiffs would therefore be permitted to construct the proposed structure under the terms of the Ground Lease.

The remainder of defendants' points challenge the award of damages by the trial court. In view of our holding in point two we find that award erroneous.

The judgment of the trial court on plaintiffs' declaratory judgment action is affirmed. The judgment finding that defendants breached the lease is reversed and the award of damages is vacated.